**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | | |
|---|---|---|
| **ACUITY, A MUTUAL INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No. _____** |
| **STEPHEN ANDREW YEAGER, MATTHEW SAMUEL BRATTON, AND MCSCROOGE'S WINE BOUTIQUE & LIQUOR WAREHOUSE, INC.,** | ) ) ) ) ) | |
| **Defendants.** | | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the plaintiff, Acuity, A Mutual Insurance Company ("Acuity"), pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, as its Complaint for Declaratory Judgment and alleges as follows:

### I. THE PARTIES

1.      Acuity is an insurance company incorporated under the laws of the State of Wisconsin and its principal place of business is located in the State of Wisconsin. Acuity is authorized to transact business in the State of Tennessee.

2.      The defendant, Stephen Andrew Yeager ("Yeager"), is an adult citizen and resident of the State of Tennessee and may be served at 200 Jennings Avenue, Knoxville, TN 37917.

3.      The defendant McScrooge's Wine Boutique & Liquor Warehouse, Inc. ("McScrooge") is a for-profit Tennessee corporation and may be served through its registered agent, Earl Ignatius Gettelfinger, at 307 N. Peters Road, Knoxville, TN 37922.

4.     The defendant, Matthew Samuel Bratton ("Bratton") is an adult citizen and resident of the State of Tennessee and may be served at 307 N. Peters Road, Knoxville, TN 37922.

## II.  VENUE AND JURISDICTION

5.     This case is brought pursuant to the Declaratory Judgment Act as codified in 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. Jurisdiction is proper within this Court pursuant to 28 U.S.C. § 1332 as the parties to this action are citizens and residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Furthermore, at issue is an insurance contract negotiated in the Eastern District of Tennessee and delivered in the Eastern District of Tennessee. Therefore, jurisdiction within the U.S. District Court for the Eastern District of Tennessee is proper.

6.     As will be more fully set forth below, Acuity issued Policy No. X92369 ("the policy") to McScrooge effective April 5, 2021, through April 5, 2022, at its place of business located in Knox County, Tennessee. The acts and/or omissions giving rise to the submission of insurance claims under the policy referenced herein arose from allegations in a lawsuit filed against the defendants in Knox County, Tennessee.  Accordingly, venue is proper in this Court and in this Division pursuant to 28 U.S.C. §§ 1391 and 123, respectively.

## III.  FACTS

7.     Acuity incorporates by reference the allegations contained in paragraphs 1 through 6.

7.     This action arises out of an Underlying Complaint filed against McScrooge, Yeager, and Bratton (collectively "the defendants") by Jordan Johnson Right and Lauren

AU McScrooges Wine Right Comp DJ 230705

Right ("the underlying plaintiffs") in the Circuit Court for Knox County, Tennessee, under Docket No. I-262-22 ("the Underlying Complaint"). A true and exact copy of the Underlying Complaint is attached hereto as **Exhibit A**.

8. According to the Underlying Complaint, the underlying plaintiff, Jordan Right ("Husband") worked at McScrooge with Yeager. Underl. Compl. ¶ 9.

9. In November of 2021, the underlying plaintiffs' daughter had to undergo heart surgery and subsequently went into withdraws from methadone. Underl. Compl. ¶ 8.

10. The Underlying Complaint asserted that between November 14 – 20, 2021, Yeager told Husband that "those who quit their jobs at [McScrooge] have their personal information posted to the internet to be 'hunted' and 'killed by a million paper cuts'". Underl. Compl. ¶ 12. It alleged that Yeager told Husband that Husband was "in too deep" and that Yeager was "not just coming for [Husband], but also his family too"; and further made comments about the plaintiffs' daughter's withdrawal problems. Underl. Compl. ¶ 13.

11. The Underlying Complaint asserted that Yeager's comments were made within the course and scope of his employment with McScrooge. Underl. Compl. ¶ 11.

12. Husband subsequently resigned from his position at McScrooge on November 21, 2021. Underl. Compl. ¶ 14. However, the Underlying Complaint asserted that Husband began receiving calls, texts, and emails from Yeager and Bratton to his cell phone and to his new employer in an attempt to defame Husband and interfere with his employment. Underl. Compl. ¶ 15.

13. It asserted that Yeager intentionally obtained Husband's information with

AU McScrooges Wine Right Comp DJ 230705

the intent to cause emotional distress and interfere with Husband's job. Underl. Compl. ¶ 16.

14.    In addition, Husband received in excess of 200 unsolicited communications from third parties. Underl. Compl. ¶ 22.

15.    The Underlying Complaint asserted that the plaintiffs did not consent to McScrooge disseminating the plaintiff's contact information to Yeager for any other purpose than was necessary to carry out McScrooge's ordinary business. Underl. Compl. ¶ 29.

16.    The underlying plaintiffs filed a police report with the Knox County Sheriff's Department, reporting Yeager's harassing communications. Underl. Compl. ¶ 24.

17.    Based on these facts, the Underlying Complaint asserted the following causes of action:

**Count I: Stalking** - the Underlying Complaint asserted that Yeager's purposeful and intentional harassing amounted to stalking. Underl. Compl. ¶ 31.

**Count II: Invasion of the Right of Privacy** – the Underlying Complaint alleged that Yeager and Bratton intentionally intruded upon the underlying plaintiffs' solitude and seclusion of their private affairs. Underl. Compl. ¶ 32.

**Count III: Intentional Interference with Husband's Business Relationships** – the Underlying Complaint asserted that Yeager and Bratton intentionally and maliciously interfered with Husband's business relationships in an attempt to defame Husband. Underl. Compl. ¶ 33.

**Count IV: Respondeat Superior** – the Underlying Complaint asserted that McScrooge is liable because Yeager and Bratton were acting within the course and scope of their employment and utilized information available to them by virtue of Mc Scrooge's records. Underl. Compl. ¶ 38.

**Count V: Negligent Supervision** – the Underlying Complaint alleged that McScrooge was negligent in the supervision of Yeager and Bratton. Underl. Compl. ¶ 39.

18.    The Underlying Complaint seeks damages for emotional distress, including

mental injury, anxiety, and the inability to sleep, as well as loss of consortium. In addition, the Complaint seeks punitive damages.

19.     At all times relevant to the underlying complaint, Acuity had in force the policy issued to McScrooge. A true and exact copy of the policy is attached hereto as **Exhibit B**. The policy provided Bis-Pak Business Liability ("Bis-Pak") coverage and Excess Liability ("Excess") coverage, but only in accordance with the policy terms, definitions, conditions, and exclusions.

20.     Acuity is presently defending McScrooge in the Underlying Complaint under Reservation of Rights. Acuity issued a disclaimer to Yeager and Bratton and is not presently defending them in the Underlying Complaint.

21.     Acuity alleges and avers that an actual controversy exists between itself and the defendants, and that this Court is vested with the power in the instant case to declare and adjudicate the rights and legal relationships of Acuity and the defendants with reference to the issues raised herein.

## IV.  DECLARATORY RELIEF SOUGHT WITH RESPECT TO DEFENDANTS YEAGER AND BRATTON

22.     Acuity incorporates by reference the allegations contained in paragraphs 1 through 21.

23.     Acuity alleges and avers that the policy does not provide coverage for any of the claims asserted against Yeager or Bratton in the Underlying Complaint.

24.     The insuring agreement of the Bis-Pak coverage under Form CB-0006 (8-15) provided as follows:

**LIABILITY AND MEDICAL EXPENSES COVERAGES**

**1.        Business Liability**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury, property damage* or *personal* and *advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury, property damage* or *personal* and *advertising injury* to which this insurance does not apply. We may at our discretion investigate any *occurrence* or offense and settle any claim or *suit* that may result. But:

(1) The amount we will pay for damages is limited as described in the Liability and Medical Expenses Limits of Insurance Section; and

(2) Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension – Supplementary Payments.

b. This Insurance applies:

(1) To *bodily injury* or *property damage* only if:

(a) To *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory*; and

(b) The *bodily injury* or *property damage* occurs during the policy period.

(c) Prior to the policy period, no insured listed under item 1 of Who Is An Insured and no employee authorized by you or to give or receive notice of an *occurrence* or claim, knew that the *bodily injury* or *property damage* had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the policy period , that the *bodily injury* or *property damage* occurred, then any continuance, change or resumption of such *bodily injury* or *property damage* during or after the policy period will be deemed to have been known before the policy period.

(2) To *personal* and *advertising injury* caused by an offense arising out of your business, but only if the offense was committed in the coverage territory during the policy period.

c. *Bodily injury* or *property damage* which occurs during the policy period and was not, prior to the policy period, known to have occurred

AU McScrooges Wine Right Comp DJ 230705

by an insured listed under item 1 of Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim, includes any continuation, change or resumption of *bodily injury* or *property damage* after the end of the policy period.

d.     *Bodily injury* or *property damage* will be deemed to have been known to have occurred at the earliest time when an insured listed under item 1 of Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim:

(1)     Reports all, or any part, of the *bodily injury* or *property damage* to us or any other insurer;

(2)     Receives a written or verbal demand or claim for damages because of the *bodily injury* or *property damage;* or

(3)     Becomes aware by any other means that *bodily injury* or *property damage* has occurred or has begun to occur.

e.     Damages because of *bodily injury* include damages claimed by any person or organization for care, loss of services or death resulting at any time from the *bodily injury.*

27.     The BOP provided the following definitions:

**LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

\*\*\*\*

**13.**     "*Occurrence*" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.**     *"Personal and advertising injury"* means injury, including consequential *bodily injury,* arising out of one or more of the following offenses:

**a.**     False arrest, detention or imprisonment;

**b.**     Malicious prosecution;

**c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

**d.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.**     Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.**     The use of another's advertising idea in your *advertisement; or*

7

**g.** Infringing upon another's copyright, trade dress or slogan in your *advertisement.*

28. The definition of "bodily injury" was amended by endorsement CB-7456 (8-20), as follows:

**P.    Bodily Injury Definition Expanded**

The definition of *bodily injury* is amended to include mental distress and mental injury, including but not limited to mental anguish and emotional anguish

29. The policy only provides coverage for "bodily injury" or "property damage" caused by an "occurrence" or "personal and advertising injury." which is defined as an "accident."

30. Acuity alleges and avers that the intentional acts of stalking, intentional interference with Husband's business relationships, and invasion of privacy do not constitute a covered "occurrence" or "accident" under the policy because Yeager and Bratton's conduct was intentional. Thus, Acuity does not have a duty to defend or indemnify Yeager or Bratton for any claims alleged in the Underlying Complaint.

31. Acuity avers and alleges that the causes of action against Yeager and Bratton for stalking and intentional interference with business relationships do not fall within the definition of "personal and advertising injury."

32. Acuity avers and alleges that, while a claim for invasion of privacy may fall within the definition of "personal and advertising injury", coverage is excluded for the claims and damages sought in the Underlying Complaint by operation of the following exclusions:

**EXCLUSIONS**

**1.    Applicable to Business Liability Coverage**

AU McScrooges Wine Right Comp DJ 230705

**This Insurance does not apply to:**

\*\*\*\*

**p.**     Personal and Advertising Injury

*Personal and advertising injury:*

(1)     Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict *personal and advertising injury;*

(2)     Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

\*\*\*\*

**t.**     Criminal Acts

*Personal and advertising injury* arising out of a criminal act committed by or at the direction of the insured.

33.     The "Knowing Violation of Rights of Another" Exclusion applies to bar coverage for the cause of action for invasion of privacy because Yeager and Bratton allegedly acted intentionally to harass the plaintiffs with the intent to cause harm. In addition, Yeager and Bratton's criminal acts of stalking are clearly excluded under the "Criminal Acts" Exclusion.

34.     In addition, Acuity alleges and avers that the allegations and damages sought against Yeager and Bratton in the Underlying Complaint are also excluded under the following exclusions:

**EXCLUSIONS**

**1.     Applicable to Business Liability Coverage**

**This Insurance does not apply to:**

**a.**     Expected or Intended Injury

> *Bodily injury* or *property damage* expected or intended from the standpoint of the insured. This exclusion does not apply to *bodily injury* resulting from the use of reasonable force to protect persons or property.

35.     In addition, Endorsement CB-0417 (1-10), which provided the following

Employment Related Practice Exclusion:

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

The following exclusion is added:

**1.**     This insurance does not apply to *bodily injury* or *personal and advertising injury* to:

    **a.**     A person arising out of any:

        (1)     Refusal to employ that person;

        (2)     Termination of that person's employment; or

        (3)     Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

    **b.**     The spouse, child, parent, brother or sister of that person as a consequence of *bodily injury* or *personal and advertising injury* to that person at whom any of the employment- related practices described in paragraphs (1), (2) or (3) above is directed.

**2.**     The Employment-Related Practices Exclusion applies:

    **a.**     Whether the injury-causing event described in paragraph (1), (2) or (3) above occurs before employment, during employment or after employment of that person;

    **b.**     Whether the insured may be liable as an employer or in any other capacity; and

    **c.**     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

10

36.    The Bis-Pak excludes any coverage for "bodily injury" or "personal and advertising injury" claims to a person arising out of any employment-related practices, policies, acts or omissions such as defamation, harassment, humiliation, or discrimination. Therefore, Acuity avers and asserts that this exclusion applies to bar coverage for Yeager and Bratton's harassing, defamatory, humiliating, and coercive conduct that they committed during the scope of their employment with McScrooge.

37.    In addition, the Bis-Pak also included Endorsement CB-1504 (5-14), which applies to bar coverage for damages arising out of any access to or disclosure of a person's personal information as follows:

**EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION**

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

A.    Exclusion 1s is replaced by the following: This insurance does not apply to:

s.    Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability

(1)    Damages, other than damages because of *personal and advertising injury,* arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2)    Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in paragraph (1) or (2) above.

However, unless paragraph (1) above applies, this exclusion does not apply to damages because of *bodily injury.*

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications soft- ware), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer soft- ware which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**B.**    The following is added to Exclusions 1p:

This insurance does not apply to:

**p.**    Personal And Advertising Injury

*Personal and advertising injury:*

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

38.    Acuity alleges and avers that there is no coverage available to Yeager or Bratton for any of the causes of action against them by operation of the above referenced policy terms, conditions, definitions and exclusions.

39.    Acuity also issued Excess coverage under Form CU-7037 (5-05), which provided the following insuring agreement:

**1.    Insuring Agreement**

**a.**    We will pay those sums, in excess of the amount payable under the terms of any *underlying insurance,* that the insured becomes legally

obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

40.     If there is no coverage under the underlying general liability coverage, there is no coverage under the Commercial Excess Liability Coverage. Since there is no coverage under the Bis-Pak, as discussed above, Acuity avers that there is no coverage available under the Excess coverage of the policy.

41.     In addition, and/or in the alternative, the Excess contained the following exclusion:

**2.      Exclusions**

The exclusions that apply to the *underlying insurance* apply to this insurance.

42.     Since there is no coverage available under the Bis-Pak as stated above, Acuity avers that there is no coverage under the Excess coverage.

43.     Acuity alleges and avers that there is no coverage available to Yeager or Bratton for any of the causes of action against them by operation of the above referenced policy terms, conditions, definitions and exclusions.

44.     Erie alleges and avers it has no duty to defend or indemnify Yeager or Bratton for any allegations, claims, or damages sought or to be awarded in the Underlying Complaint.

45.     Thus, Erie requests a declaration from the Court that the policy of insurance it issued to McScrooge does not provide coverage to Yeager or Bratton for the allegations alleged in the Underlying Complaint.

### V.  DECLARATORY RELIEF SOUGHT WITH RESPECT TO MCSCROOGE

46.     Acuity incorporates by reference the allegations contained in paragraphs 1

through 45.

47. Acuity alleges and avers that the policy does not provide coverage for any of the claims asserted against McScrooge in the Underlying Complaint.

48. The insuring agreement of the Bis-Pak coverage under Form CB-0006 (8-15) provided as follows:

### LIABILITY AND MEDICAL EXPENSES COVERAGES

**1.     Business Liability**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury, property damage* or *personal* and *advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury, property damage* or *personal* and *advertising injury* to which this insurance does not apply. We may at our discretion investigate any *occurrence* or offense and settle any claim or *suit* that may result. But:

(1)    The amount we will pay for damages is limited as described in the Liability and Medical Expenses Limits of Insurance Section; and

(2)    Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension – Supplementary Payments.

b.    This Insurance applies:

(1)    To *bodily injury* or *property damage* only if:

(a)    To *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory*; and

(b)    The *bodily injury* or *property damage* occurs during the policy period.

(c)    Prior to the policy period, no insured listed under item 1 of Who Is An Insured and no employee authorized by you or to give or receive notice of an *occurrence* or

14

claim, knew that the *bodily injury* or *property damage* had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the policy period , that the *bodily injury* or *property damage* occurred, then any continuance, change or resumption of such *bodily injury* or *property damage* during or after the policy period will be deemed to have been known before the policy period.

(2) To *personal* and *advertising injury* caused by an offense arising out of your business, but only if the offense was committed in the coverage territory during the policy period.

c. *Bodily injury* or *property damage* which occurs during the policy period and was not, prior to the policy period, known to have occurred by an insured listed under item 1 of Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim, includes any continuation, change or resumption of *bodily injury* or *property damage* after the end of the policy period.

d. *Bodily injury* or *property damage* will be deemed to have been known to have occurred at the earliest time when an insured listed under item 1 of Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim:

(1) Reports all, or any part, of the *bodily injury* or *property damage* to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the *bodily injury* or *property damage;* or

(3) Becomes aware by any other means that *bodily injury* or *property damage* has occurred or has begun to occur.

e. Damages because of *bodily injury* include damages claimed by any person or organization for care, loss of services or death resulting at any time from the *bodily injury.*

49. The BOP provided the following definitions:

**LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

\*\*\*\*

**13.** "*Occurrence*" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "*Personal and advertising injury*" means injury, including consequential *bodily injury,* arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your *advertisement;* or

**g.** Infringing upon another's copyright, trade dress or slogan in your *advertisement.*

50. The definition of "bodily injury" was amended by endorsement CB-7456 (8-20), as follows:

**P.  Bodily Injury Definition Expanded**

The definition of *bodily injury* is amended to include mental distress and mental injury, including but not limited to mental anguish and emotional anguish

51. The policy only provides coverage for "bodily injury" or "property damage" caused by an "occurrence" or "personal and advertising injury." which is defined as an "accident."

52. Acuity avers and alleges that coverage for the claims and damages sought in the Underlying Complaint against McScrooge are excluded by operation of the following exclusions:

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

The following exclusion is added:

16

1.  This insurance does not apply to *bodily injury* or *personal and advertising injury* to:

    a.  A person arising out of any:

        (1) Refusal to employ that person;

        (2) Termination of that person's employment; or

        (3) Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

    b.  The spouse, child, parent, brother or sister of that person as a consequence of *bodily injury* or *personal and advertising injury* to that person at whom any of the employment- related practices described in paragraphs (1), (2) or (3) above is directed.

2.  The Employment-Related Practices Exclusion applies:

    a.  Whether the injury-causing event described in paragraph (1), (2) or (3) above occurs before employment, during employment or after employment of that person;

    b.  Whether the insured may be liable as an employer or in any other capacity; and

    c.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

                                ****

**EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION**

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

A.  Exclusion 1s is replaced by the following: This insurance does not apply to:

    s.  Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability

        (1) Damages, other than damages because of *personal and advertising injury,* arising out of any access to or disclosure of any person's or organization's confidential or personal

17

information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2)   Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in paragraph (1) or (2) above.

However, unless paragraph (1) above applies, this exclusion does not apply to damages because of *bodily injury*.

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications soft- ware), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer soft- ware which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**B.**   The following is added to Exclusions 1p:

This insurance does not apply to:

**p.**   Personal And Advertising Injury

*Personal and advertising injury:*

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

See Endorsement CB-0417 (1-10) and CB-1504 (5-14).

18

53.     The Bis-Pak excludes any coverage for "bodily injury" or "personal and advertising injury" claims to a person arising out of any employment-related practices, policies, acts or omissions such as defamation, harassment, humiliation, or discrimination. Therefore, Acuity avers and asserts that this exclusion applies to bar coverage for "bodily injury" and "personal and advertising injury" arising out of coercion, defamation, harassment or humiliation because it arises out of employment-related practices.

54.     In addition, there is no coverage for any damages arising out of McScrooge's disclosure of or access to the plaintiffs' personal information.

55.     Acuity alleges and avers that there is no coverage available to McScrooge for any of the causes of action against it by operation of the above referenced policy terms, conditions, definitions and exclusions.

56.     Acuity also issued Excess coverage under Form CU-7037 (5-05), which provided the following insuring agreement:

**1.      Insuring Agreement**

    **a.**    We will pay those sums, in excess of the amount payable under the terms of any *underlying insurance,* that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

57.     If there is no coverage under the underlying general liability coverage, there is no coverage under the Commercial Excess Liability Coverage. Since there is no coverage under the Bis-Pak, as discussed above, Acuity avers that there is no coverage available under the Excess coverage of the policy.

19

58. In addition, and/or in the alternative, the Excess contained the following exclusion:

**2. Exclusions**

The exclusions that apply to the *underlying insurance* apply to this insurance.

59. Since there is no coverage available under the Bis-Pak as stated above, Acuity avers that there is no coverage under the Excess coverage.

60. Thus, Acuity requests a declaration from the Court that the policy of insurance it issued to McScrooge does not provide coverage to McScrooge for the allegations alleged in the Underlying Complaint.

61. Acuity also requests a declaration that, since no coverage is afforded by the policy, it is entitled to withdraw the defense counsel appointed to McScrooge under reservation of rights.

**WHEREFORE,** the plaintiff, Acuity, A Mutual Insurance Company, prays as follows:

1. That the defendants be required to appear and answer herein;

2. That this Court adjudicate and declare that Acuity is not obligated to defend or indemnify Yeager for the damages sought in the Underlying Complaint and the Bis-Pak and Excess do not provide coverage for any of the allegations against him in the Underlying Complaint;

3. That this Court adjudicate and declare that Acuity is not obligated to defend or indemnify Bratton for the damages sought in the Underlying Complaint and the Bis-Pak and Excess do not provide coverage for any of the allegations against him in the Underlying Complaint;

AU McScrooges Wine Right Comp DJ 230705

4.      That this Court adjudicate and declare that Acuity is not obligated to defend or indemnify McScrooge for the damages sought in the Underlying Complaint and the Bis-Pak and Excess do not provide coverage for any of the allegations against it in the Underlying Complaint;

5.      That this Court adjudicate and declare that Acuity may withdraw counsel appointed for McScrooge under Reservation of Rights; and

6.      For such further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,


s/ Hannah J. Leifel
**PARKS T. CHASTAIN**
Registration No. 13744
DIRECT:  (615) 630-7717
(615) 256-8787, Ext. 114
pchastain@bkblaw.com
**HANNAH J. LEIFEL**
Registration No. 38632
DIRECT:  (615) 630-7722
(615) 256-8787, Ext. 152
Attorneys for Plaintiff, Acuity, A Mutual Insurance Company

**BREWER, KRAUSE, BROOKS, CHASTAIN & MEISNER, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN  37228
(615) 256-8787